Kenneth Wayne NELSON, Appellant,

v.

Charles K. MILLER, Captain, United
States Navy, etc., et al.

No. 16089.

United States Court of Appeals
Third Circuit.

Argued Dec. 6, 1966.

Decided Feb. 13, 1967.

Rehearing Denied March 13, 1967.

James J. Orlow, Philadelphia, Pa., for
appellant.

David L. Rose, Atty., Dept. of Justice, Appellate Section, Civil Div., Washington, D. C. (J. William Doolittle, Acting Asst. Atty. Gen., Drew J. T. O'Keefe, U. S. Atty., Morton Hollander, Howard J. Kashner, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellees.

Before STALEY, Chief Judge, and McLAUGHLIN and FORMAN, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

The appellant, Kenneth Wayne Nelson, sought a declaratory judgment and injunctive relief in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 2201, 2202 and 5 U.S.C. § 1009, to restrain the appellees, officers and an official of the United States Navy, from discharging him from the service. This appeal is taken from the order of the District Court denying the appellant's motion for a preliminary injunction while retaining jurisdiction for final hearing. Following a hearing the District Court delivered its opinion orally, making findings of fact based on evidence which may be summarized as follows:

The appellant is an Electronics Engineer First Class in the United States Navy with approximately ten years of service. On October 22, 1965, he was interviewed in London by Agent Siler of Naval Intelligence, who told him that he was conducting an investigation of homosexual activities and later stated that the appellant was suspected of associating with a homosexual known as "Phil." The appellant denied this, but in response to a question by Agent Siler, told of an incident which occurred in San Francisco in 1963. He then signed an unsworn typewritten statement prepared by Agent Siler in which a version of the incident was set forth. The District Court found that Agent Siler misled the appellant as to the purpose of the interrogation and the use to which it would be put and at no time advised him of any right of counsel.

The appellant was transferred to the Fourth Naval District at Philadelphia, Pennsylvania for court-martial,[1] but the District Commandant refused, for the best interest of the Naval Service, to convene a court-martial despite the appellant's request for trial by the same. Instead, on the recommendation of the Naval Station, approved by the Bureau of Naval Personnel, the case was heard administratively by a Field Board of Officers. At the hearing, the appellant's counsel objected *inter alia* to the introduction of both Agent Siler's report and the statement signed by the appellant on numerous grounds, among which were that the statement was unsworn, elicited without proper warning, misleadingly incomplete in violation of Navy regulations,[2] and that the report was hearsay. These objections were overruled. In conjunction with the hearsay objection, counsel further demanded the right to cross-examine Agent Siler, but he was not produced and no such opportunity was afforded.

Thereafter, the appellant took the stand and testified under oath that on the day in question he had gone to the Naval Hospital in San Francisco to escort the body of a friend, who had been killed in an automobile accident two days before, to his family. Upon arrival, however, he was taken to the morgue to identify the body, at which time an autopsy was being performed and the body was in a gruesome state of dismemberment and evisceration. Furthermore, by some misunderstanding, the appellant's name had been placed on the death certificate instead of that of the deceased.

---

1. Pending his discharge, the appellant, though a qualified electronics engineer with high priority security clearance, serves as a master-at-arms, supervising "transit personnel," in which position he is doing an "outstanding job" according to the testimony of his Commanding Officer.

2. Instructions of the Secretary of the Navy (SECNAVINST) § 1009.9–(6) (a).

Feeling dazed and faint, the appellant left the morgue and went directly to a certain bar in San Francisco, where he drank heavily from midafternoon until midnight, when he left while extremely intoxicated with a regular patron known to the appellant as "Chuck." This man had offered to get the appellant a hotel room, which the appellant, not desirous of wandering into the street and encountering the shore patrol, accepted. After losing consciousness or falling asleep in the hotel room the appellant awoke sometime later to find that "Chuck" was performing a homosexual act upon him. He testified that although he became aware of what was happening and willed to resist, he lacked the physical capacity to do so, due to his state of intoxication. He further testified that he had no prior suspicion that the assailant was a homosexual, nor did he believe the bar to be a hangout for homosexuals. There was no other evidence of homosexual involvement, and, in fact, a naval psychiatrist's report stated that there were no indications of homosexual orientation in the appellant's psychodynamic formulation.

The Field Board was supplied with a mimeographed form subtitled "Findings of the Board," on which were printed the following options relevant to the appellant's charge:

"( ) Sexual pervert. ( ) Committed homosexual acts. ( ) Homosexual tendencies."

The Board marked the space designating "Committed homosexual acts,"[3] but recorded its recommendation that the appellant be retained on active duty. Later, the Senior Member of the Field Board wrote an endorsement dated April 28, 1966 to a letter sent by the appellant to the Chief of Naval Personnel, which stated in part:

"2. The Members of the Board were unanimously of the opinion that NELSON was the victim of a homosexual attack, and that he was not a voluntary participant in it.

"3. The Board made its Report in the form in which it was submitted because that block checked was the closest description related to the allegations. * * *

"4. The Report was in error, insofar as it may be considered that the Field Board in any way concluded that NELSON was a voluntary participant in a homosexual act. No member of the Board would have recommended retention had we in any way considered NELSON to be a homosexual. * * *"

The District Court's findings were in accord with the foregoing endorsement.

Notwithstanding the Field Board's recommendation and a subsequent recommendation by the appellant's Commanding Officer that he be retained, the appellant was ordered discharged from the service by a letter from the Chief of Naval Personnel, dated March 24, 1966, for the "convenience of the Government in accordance with reference (a), Code 21 L, 'other good and sufficient reasons.' "[4] By letter to the Commanding Officer, United States Naval Station, Philadelphia, dated July 14, 1966, the Chief of Naval Personnel reaffirmed its decision, citing Instructions of the Secretary of the Navy (SECNAVINST) § 1900.9(4) (c) that intoxication does not

3. There is, strangely enough, no option on the form by which the Board could enter a finding of innocence of the conduct charged. The form was prescribed by 32 C.F.R. 730.15(h), promulgated in 1961, which had been superseded at the time of the hearing by 32 C.F.R. 730.15 (h) (Supp.1966), promulgated in 1964. The revised form offered little increased flexibility except that while the 1961 form contained the instruction, "Use one or more of the following," referring to the options, the 1964 form stated, "Use one or more of the following as appropriate." The problem has been remedied by a recent revision entered on July 27, 1966, which permits the Board to enter its findings unrestrictedly. See § 730.15(i), 31 Fed.Reg. 10191 (1966). In the circumstances of this case, the inadequacy of the prior forms may well have prejudiced the appellant.

4. See 32 C.F.R. 730.6(a) (6) (Supp.1966).

constitute an excuse for homosexual conduct.[5]

On March 29, 1966, notation was made in the appellant's service record pursuant to the Chief of Naval Personnel's letter of March 24, 1966, that the appellant was not to be reenlisted without his prior approval. The Navy does not propose to assign any substantive reason for discharge.

When discharged, the appellant will be issued two records of his separation from the service. The first is a formal certificate entitled "Honorable Discharge," on which no record of the details of his service will appear. The other is the actual discharge document, Form DD 214, which will indicate that the "Character of the Service" was "Honorable," but it will also state as the "Reason and Authority" for discharge, 'BuPers Manual Article C-10306, Code 21L and BuPers ltr Pers-F3211-lgl of 24 March 1966," referring to "Other good and sufficient reasons (non-derogatory) when determined by proper authority." It is this second document which is invariably inspected when an ex-serviceman seeks employment.

While the proposed discharge is thus "Honorable," the uncontradicted testimony of two civilian personnel experts and the findings of the District Court indicate that the fact that a non-commissioned officer with as much service as ten years was leaving the service instead of remaining to obtain valuable retirement privileges at twenty years, together with the foregoing notation as the reason for discharge, would stimulate civilian employment interviewers to pry into the underlying reason for the appellant's separation. The evidence showed that although the appellant, if otherwise qualified, could obtain some kinds of employment outside the electronics industry, he could not gain employment in positions requiring security clearance, and would have to start on an entry level at a substantially lower income; that even in other industries he can expect to be prejudiced as to future employment because of the homosexual taint of the conditions attached to his discharge. The District Court concluded that "plaintiff's discharge for convenience of the Government * * * will in some instances * * * stigmatize plaintiff as a homosexual for civilian employment and re-enlistment purposes." It also found, however, that the notation barring appellant's reenlistment without prior approval will not be available for public examination.

The appellant has exhausted all administrative remedies available to him prior to discharge. If discharged, however, he would have access to the Board for Correction of Naval Records. Taking note of this fact and referring to its recent decision in Crawford v. Davis,[6] the District Court held that it would not interfere with the Navy's discharge of the appellant and denied injunctive relief while explicitly retaining jurisdiction for "adjudication after final hearing."

In Crawford v. Davis, supra, the District Court correctly stated that the availability of injunctive relief depended upon four criteria: [7]

(1) Irreparable harm to the petitioner unless the stay is granted;

(2) Absence of substantial harm to other interested parties;

(3) Absence of harm to the public interest; and

(4) A likelihood that the petitioner would prevail on the merits of his appeal.

---

5. The letter of the Chief of Naval Personnel actually related SECNAVINST § 1900.9(4) (c) as stating that intoxication does not constitute an excuse for homosexual *involvement.* The instruction in fact uses the phrase "homosexual *conduct.*" (Italics supplied.)

6. 249 F.Supp. 943 (E.D.Pa.1966), cert. den. 383 U.S. 921, 86 S.Ct. 923, 15 L.Ed.2d 676 (1966).

7. Id. at 945.

In the present case, the District Court found that no harm would result to either the Navy or the public if the appellant were retained in the service. However, while it recognized that the appellant would suffer harm if a stay were not granted, it was unable to find that he would suffer irreparable harm because of the availability of post-discharge administrative review and because the discharge was "Honorable." It also concluded that there was sufficient doubt of the "success of the *administrative* appeal." (Emphasis supplied.)

■■ To the extent that the District Court founded its denial of a preliminary injunction on the dubitable success of the administrative appeal, the determination was improperly directed. Rather, the fourth criterion relates to an estimate of the ultimate judicial result.[8] We do not propose an answer to the question as revised, since the order of the District Court is sustainable on its finding of a lack of irreparable harm.

The Board for Correction of Naval Records was established pursuant to 10 U.S.C. § 1552, providing for the creation of civilian boards from the executive part of a military department to correct military records to remove error or injustice. As a result of any such correction, the department may pay "a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits" or repay a "fine or forfeiture."[9] Such payment may be continued up to one year after the date that the record is corrected if the claimant is not reenlisted in, or appointed or reappointed to, the grade to which the payments relate. Furthermore, "Without regard to qualifications for reenlistment,

or appointment or reappointment, the Secretary concerned may reenlist a person in, or appoint or reappoint him to, the grade to which payments under this section relate."[10]

The Board is required by regulation to review each application and available records to determine whether to authorize a hearing or deny the application without a hearing. It may recommend to the Secretary of the Navy that the records be corrected as requested by the appellant without a hearing. It may deny such an application without a hearing if it determines that insufficient evidence has been presented to indicate probable material error or injustice. If the application is denied, the applicant will be so advised and permitted to submit new material evidence for consideration.[11] When a hearing is authorized, the appellant is entitled to appear before the Board in person or through retained counsel and may present witnesses in his behalf.[12]

■ Following a hearing the Board is required to make written findings, decisions and recommendations.[13] The record of the proceedings, including the Board's conclusions is then forwarded to the Secretary of the Navy, "who will direct such action in each case as he determines to be appropriate."[14] He may not, however, arbitrarily overrule the recommendations of the Board where the findings of the Board are justified by the record.[15]

A mounting resort by the military services to administrative channels for the discharge of personnel has created new problems of the proper role of the judiciary in its review of alleged procedural irregularities. This court has not

---

8. Schwartz v. Covington, 341 F.2d 537, 538 (9 Cir. 1965) ("merits of * * * appeal to the District Court."); Cf. Virginia Petroleum Jobbers Ass'n v. Fed'l Power Com'n, 104 U.S.App.D.C. 106, 259 F.2d 291 (D.C. Cir. 1958); Sperry and Hutchinson Co. v. Federal Trade Com'n, 256 F.Supp. 136 (SDNY 1966).

9. 10 U.S.C. § 1552(c).

10. 10 U.S.C. § 1552(d).

11. 32 C.F.R. § 723.3(e).

12. 32 C.F.R. § 723.4(a).

13. 32 C.F.R. § 723.6(a) (3).

14. 32 C.F.R. § 723.7.

15. Eicks v. United States, 172 F.Supp. 445, 145 Ct.Cl. 552 (1959); Betts v. United States, 172 F.Supp. 450, 145 Ct.Cl. 530 (1959); Proper v. United States, 154 F. Supp. 317, 139 Ct.Cl. 511 (1957).

heretofore decided what effect the availability of post-discharge administrative review has upon the jurisdiction of a court requested to take protective action. Among those circuits who have considered the question, there is a division as to the proper course of action. The Fifth Circuit in McCurdy v. Zuckert,[16] has held that where post-discharge review could grant the complaining party "complete retroactive restoration," the district court was required to dismiss the complaint since the action was premature and the court lacked "primary jurisdiction." The District of Columbia Circuit, in contrast, adopted a more flexible approach in Ogden v. Zuckert,[17] holding that the district court was not deprived of jurisdiction by the appellant's failure to exhaust post-discharge administrative remedies, but that it may, in its discretion, refrain from decision while retaining jurisdiction of the case.[18] In Sohm v. Fowler,[19] that court in cataloging the components of such discretion, indicated that it could formulate a rule that when the post-discharge remedy had not been exhausted the court should retain jurisdiction but defer decision unless the party invoking the court's jurisdiction can demonstrate "special circumstances."

■■ We think the latter is the better view.[20] As demonstrated in Ogden v. Zuckert, supra, the statute authorizing the creation of Boards of Correction was intended to supplant private bills in Congress for the correction of military records, and was not intended to affect judicial jurisdiction. Related to this is that insofar as the Board was a substitute for private bills in Congress, its function may, in particular cases, be that of a pardons board rather than an instrument for the interpretation and refinement of military regulations and procedures. Furthermore, there are some cases in which post-discharge review may be inadequate by the very fact that the interim between discharge and board action harbors a potential for irreparable harm, notwithstanding possible reinstatement. Indeed, the District Court made such a determination in Crawford v. Davis, supra. Finally, there is nothing in either the enabling statute nor the implementing regulations that requires the Board for Correction of Naval Records to await discharge before granting relief.[21] There was testimony before the District Court that this is essentially a matter of usage and there have been cases in which applications have been submitted to the Board prior to discharge, but that the Board does not give them serious attention until discharge has been effected. Thus because discharge itself may result in irrepara-

16. 359 F.2d 491 (5 Cir. 1966) cert. den. sub nom. McCurdy v. Brown, 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed.2d 133, Oct. 17, 1966; accord, Tuggle v. Brown, 362 F.2d 801 (5 Cir. 1966) (per curiam).

17. 111 U.S.App.D.C. 398, 298 F.2d 312 (1961).

18. The Fourth and Ninth Circuits have also held that the exhaustion of post-discharge remedies is not a prerequisite to the district court's jurisdiction to decide constitutional questions. Reed v. Franke, 297 F.2d 17, 20–21 (4 Cir. 1961); Schwartz v. Covington, supra note 8.

19. 124 U.S.App.D.C. 382, 365 F.2d 915 (1966).

20. Beard v. Stahr, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321 (per curiam), cited in McCurdy v. Zuckert, supra note 16, is readily distinguishable in that the appellant there could not be removed from the service unless the Secretary of the Army so directed, and at the time of the suit, neither had such action been taken, nor was there any statement that it would be taken. Since the occurrence of the act complained of was uncertain, the suit was clearly premature.

21. There is also a Naval Discharge Review Board, see 32 C.F.R. § 724.1 et seq., established pursuant to 10 U.S.C. § 1553, which functions solely after discharge. Under the regulations, the Board's powers are rather limited. For example, 32 C.F.R. § 724.2(c) provides that "The Board has no authority to revoke any discharge or dismissal, to reenlist any person in the military service subsequent to discharge or dismissal, or to recall any person to active duty." The appellees have not urged that the relief provided by the Discharge Review Board would be adequate.

ble harm, and the Board appears to have the power to obviate this danger, it would be unjust to adhere to a rigid rule which would require a serviceman to submit to needless harm even in a case of a patently meritorious claim. The Ninth Circuit has in fact granted interlocutory relief enjoining retention of the claimant in the service pending *pre-discharge* action of the Board of Corrections.[22] However, even where such interlocutory relief would be appropriate, final adjudication should be withheld unless it affirmatively appears that the administrative board either has no jurisdiction or will not consider the case before discharge.

■ Gaged by relevant standards, this was not a case for the exercise of the District Court's remedial powers. We can appreciate that a discharge related to a vigorously denied allegation of homosexuality is to some extent a "special circumstance," in that, as the findings of the District Court imply, some segments of the civilian population, including potential employers, may be unwilling or unable to distinguish between voluntary and involuntary involvement, even where the underlying facts are exculpatory in this regard. But since the discharge is "Honorable" and suspect mainly in the limited, though not unimportant, area of selective hiring systems, the interim damage is minimized. Moreover, the Board has power to afford full relief, if the case so merits, and the matter is obviously within its jurisdiction. There is no indication that resort to the Board would be futile. As pointed out in Sohm v. Fowler, supra, if we were to render judgment and the Board thereafter through its more pervasive powers of review grants the appellant relief, we would be placed in an advisory capacity.

Many of the claims advanced by the appellant deal with the interpretation of naval regulations. For example, to the extent that the discharge of the appellant was based upon the convenience of the Government, which is the purport of the Chief of Naval Personnel's letter of March 24, 1966, its validity depends upon 32 C.F.R. § 730.6(6), "Other good and sufficient reasons when determined by the Chief of Naval Personnel." Thus the Board will have to consider whether this regulation permits discharge for no specified reason at all, much less one that is good and sufficient. On the other hand, to the extent that the discharge was based upon SECNAVINST § 1900.9 (4) (c), that "Intoxication * * * does not constitute an excuse for homosexual conduct," as is implied from the letter of July 14, 1966,[23] the Board will have to consider whether this instruction is directed toward voluntary conduct under the influence of alcohol or whether it applies also to a serviceman determined to have been the victim of a homosexual attack, and whose ability to resist was incapacitated by intoxication. The Navy must, of course, follow its own regulations,[24] but the primary authority for the interpretation of such regulations lies within the Navy's own appellate system. Our task would be limited to whether the regulations can reasonably bear the imputed construction.

■ Moreover, deference to Naval administrative authorities in this case comports with the basic policy of avoiding the unnecessary resolution of constitutional questions.[25] Aside from the general question of whether the appellant's dismissal was arbitrary, he has raised questions regarding the type of protection, if any, to which he is entitled in giving an inculpatory statement to military authorities who are contemplating court-martial, but who employ the statement in punitive administrative hearings instead. He has also claimed that his inability to cross-examine his accusers

22. Schwartz v. Covington, supra note 8; see Everett, Military Discharges—The Pendulum Swings, 1966 Duke L.J. 41, 66–67.

23. See note 4, supra.

24. Roberts v. Vance, 119 U.S.App.D.C. 367, 343 F.2d 236 (1964); see Everett, supra note 22, at 75–78.

25. Sohm v. Fowler, supra note 19, 124 U.S.App.D.C. 382, 365 F.2d at 919, n. 6 and accompanying text.

was a denial of a fair hearing.[26] And he contends that substitution of administrative hearing for court-martial was not only in violation of Naval regulations, but in conflict with the Fifth Amendment. Constitutional inquiry into these matters may be made unnecessary by answers at a military level.

For the foregoing reasons we affirm the discretionary action of the District Court denying a preliminary injunction and retaining jurisdiction of the case pending final hearing.

26. The District Court in fact concluded as a matter of law that "Plaintiff was denied procedural due process of law in that he was denied an opportunity to cross-examine the witnesses against him."

This conclusion is not without support. See Gamage v. Zuckert, (D.D.C., Nov. 9, 1965), cited in Everett, supra note 22, at 82 and Gamage v. Zuckert, 265 F. Supp. 357 (1966).