**Lieutenant Commander Joseph Leo WALTON**

v.

**Hon. John LEHMAN, Secretary of the Navy.**

**Civ. A. No. 81–3558.**

United States District Court, E.D. Pennsylvania.

May 19, 1983.

Thomas B. Kenworthy, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Dawn MacPhee, Asst. U.S. Atty., E.D. Pennsylvania, Philadelphia, Pa., for defendant.

### MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

The instant matter arises from the honorable discharge of plaintiff, Lt. Commander Joseph Walton, from the United States Navy Supply Corps. Plaintiff seeks reinstatement on the bases that the proceedings which led to his discharge violated procedural due process, unlawfully discriminated against regular officers of the Navy, and contravened federal statutory guidelines. Defendant contends plaintiff's allegations are groundless as a matter of law.

■ Now before the court are cross motions for summary judgment. Plaintiff states that the entry of summary judgment against defendant is appropriate based on the administrative record and the contention of defendant that all pertinent facts are contained in the record. As in other cases involving review of informal agency decisions, the court's decision must be based solely upon the administrative record. *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Since the material facts contained in the administrative record are not disputed, the disposition of this case on motions for summary judgment is appropriate.[1] Having considered the parties' motions, their memoranda of law, and the administrative record, I conclude that the procedure which preceded plaintiff's discharge did not comply with federal statutory requirements. Accordingly, I will grant summary judgment for plaintiff.

---

1. *Taylor v. Rederi,* 374 F.2d 545 (3d Cir.1967); Fed.R.Civ.P. 56 (summary disposition of a case is appropriate where no genuine issue of material fact is disputed).

The pertinent, undisputed facts are reflected in the administrative record. Plaintiff, who served in the Navy continuously from March 11, 1963 until April 9, 1982, has a history of alcohol abuse.[2] On April 23, 1981, the Fiscal Year 1982 Supply Corps Commander Selection Board ("Selection Board") notified the Secretary of the Navy ("Secretary") that plaintiff had not satisfactorily performed his duties at his present grade. Consequently, in a report rendered pursuant to 10 U.S.C. § 6384,[3] the Selection Board recommended that plaintiff be honorably discharged from the Navy. On April 28, 1981, the Selection Board sent the report, including the history of plaintiff's alcohol abuse, to the Judge Advocate General ("JAG") for review and recommendation. Prior to June 30, 1981, the JAG recommended that plaintiff be discharged on August 30, 1981 if the Secretary accepted the findings of the Selection Board. The JAG also agreed with the recommendation of the Deputy Chief of Naval Personnel ("Deputy Chief") that plaintiff be informed of the Selection Board's findings and be invited to submit a personal statement and any other pertinent information. Neither naval regulations nor federal statutes required that plaintiff be notified or given the opportunity to make a statement at this stage of the proceedings. Nevertheless, plaintiff was notified of the findings of the Selection Board on July 17, 1981.

On July 29, 1981, plaintiff submitted a personal statement acknowledging that his performance had declined and requesting "one last opportunity to receive treatment at the National Naval Medical Center and to prove that I can stay sober." On August 6, 1981, after reviewing all of the aforementioned documents, the Deputy Chief recommended that plaintiff be discharged effective August 30, 1981. The Chief of Naval Personnel concurred. The Secretary approved the recommendation, on August 14, 1981, and orders to discharge plaintiff were given on August 18, 1981.

On August 31, 1981, plaintiff filed suit, requesting the court either to enjoin his discharge from the Navy or to order the Navy to give plaintiff a compensable medical discharge.[4] On August 31, 1981 this court temporarily restrained defendant from discharging plaintiff from the Navy. After hearing, a preliminary injunction was issued on September 11, 1981; on defendant's unopposed motion, it was dissolved on March 17, 1982. Plaintiff was discharged from the Navy on April 9, 1982. Shortly thereafter, the case was set for trial, but on June 24, 1982, it was stayed, pending the exhaustion of administrative remedies.

Plaintiff then petitioned the Board for Correction of Naval Records ("BCNR") for reinstatement on the following grounds:

2. Plaintiff has enrolled in alcohol rehabilitation programs on five separate occasions since 1976 and has been hospitalized for alcohol detoxification. Administrative Record at 50–59, 151–52 [hereinafter AR]. Additionally, the report of the Selection Board is replete with instances from 1978 through 1981 where plaintiff's chronic intoxication yielded unexcused absences from duty, failure timely to report for duty, as well as driving and reporting for duty while under the influence of alcohol. AR at 51–57.

3. Effective September 15, 1981, § 6384 was repealed by the Defense Personnel Management Act ("DOPMA") which was enacted by Congress on December 12, 1980. Pub.L. 96–513, Title III, § 335, Dec. 12, 1980, 94 Stat. 2898. For the pertinent provisions of the DOPMA, see 10 U.S.C.A. §§ 1181–1187 (Supp.1983).

§ 6384 provided, in pertinent part:
(a) Each selection board convened under chapter 543 of this title to recommend officers for promotion shall report, from among those officers eligible for consideration, the name of each officer with less than 20 years of service whose record, in the opinion of the board, indicates his unsatisfactory performance of duty in his present grade, and, in the opinion of the board, indicates that he would not satisfactorily perform the duties of a higher grade.
(b) Each officer on the active list of the Navy or the Marine Corps whose name is reported under this section shall, subject to subsection (d), be honorably discharged from the naval service on June 30 of the fiscal year in which his name is so reported. . . .
(d) Each officer designated for limited duty whose name is reported under this section has the option of reverting to a lower grade instead of being discharged. . . .

4. Plaintiff subsequently dropped the prayer for compensable medical discharge.

1. The Secretary had no authority to discharge plaintiff, except that provided in the DOPMA. *See* 10 U.S.C.A. § 1184.

2. Prior to the discharge, the procedures prescribed by the DOPMA were not followed. *See id.* §§ 1182–1183.

3. Because his discharge certificate was not ready for delivery on April 9, 1982, plaintiff's discharge was prohibited by 10 U.S.C.A. § 1168(a).

4. The discharge procedures set forth in 10 U.S.C.A. § 6384 violated due process because notice and a hearing were not provided and because the procedures discriminate against regular Naval officers as compared to reserve Naval officers, Army officers, Air Force officers, and persons enlisted in all branches of the armed forces.

5. During the proceedings in 1981, the JAG did not inform the Secretary of the Navy's *de facto* policy of providing hearings to regular officers prior to discharge. Therefore, the Secretary did not give plaintiff a hearing.

6. After June 30, 1981, the Secretary no longer had power to discharge plaintiff pursuant to 10 U.S.C.A. § 6384.

7. The discharge proceedings violated due process because they did not afford plaintiff a hearing, as provided in the already enacted, but as yet ineffective, DOPMA. Thus, in the proceedings, the Navy purposefully deprived plaintiff of benefits Congress intended him to have.

8. Under all the circumstances, it was unjust to discharge plaintiff eleven months before the vesting of his entitlement to retirement benefits.[5]

In support of his petition, plaintiff submitted an affidavit, his separation orders and a record of the sequence of pertinent events which took place in 1981. Plaintiff specifically stated that, because he sought expeditious review and could not afford to retain counsel to appear with him, he was not requesting the BCNR to give him a hearing.

The BCNR referred plaintiff's petition to the JAG for an advisory opinion. Thereafter, the three-member BCNR reviewed the case. It denied plaintiff's petition on August 16, 1982. On September 16, 1982, this court lifted the stay of proceedings pending resort to administrative remedies. Thereafter, the cross-motions for summary judgment were filed.

■ This court has "both the power and the duty to review actions of the ... BCNR to determine whether [it] acted in an arbitrary or capricious manner." *See Neal v. Secretary of Navy,* 639 F.2d 1029, 1037 (3d Cir.1981). The applicable standard of judicial review was enunciated in *Sanders v. United States,* 594 F.2d 804 (Ct.Cl.1979) (cited with approval in *Neal,* 639 F.2d at 1037):

> Congress has acted by providing servicemen with an administrative remedy for their wrongs. Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence or contrary to law, regulation, or mandatory published procedure of a substantial nature by which plaintiff has been seriously prejudiced....

*Sanders,* 594 F.2d at 811.[6] In reviewing the action of the BCNR, the court must begin with a strong presumption that the military personnel involved in the action of the BCNR faithfully discharged their duties. This presumption may be rebutted only by evidence to the contrary found in the administrative record. *Neal,* 639 F.2d at 1037–38.

■ The court is mindful that constitutional issues should not be decided, where as here, a motion can be disposed of on statu-

---

5. Plaintiff concedes that this claim is inappropriate for judicial review.

6. The Administrative Procedure Act (APA) embodies substantially the same standard of judi-

cial review for the claim of any party adversely affected by agency action. 5 U.S.C. § 706 (1980).

tory grounds. *Nelson v. Miller,* 373 F.2d 474, 480 (3d Cir.1967). Accordingly, the court begins its consideration with plaintiff's allegations that defendant did not comply with statutory requirements when it discharged plaintiff. In his motion for summary judgment, plaintiff contends that the statutory provisions cited in the discharge orders, i.e., 10 U.S.C.A. §§ 1162–1163, did not vest the Secretary with authority to discharge him because they apply to reserve, not regular, officers. The cite in the discharge orders was the sole instance in which these statutory provisions were advanced as authority for discharging plaintiff. Defendant asserts that the reference to these provisions in the orders was administrative error and that, in any event, citation of statutory authority for discharge is not required in discharge orders. More dispositive of the issue, however, is defendant's contention that plaintiff cannot raise this claim on judicial review because he did not raise it for administrative review before the BCNR. I agree, and I therefore conclude that judicial review of this claim is prohibited. *See Doyle v. United States,* 599 F.2d 984, 1000 (Ct.Cl.1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980).

■ In a letter addressed to the court, plaintiff argues that an officer who served eight or more years would be entitled to an administrative board hearing before being discharged for unsuitability. Navy Personnel Manual, art. 3420184. Plaintiff concedes, and the court notes that plaintiff was discharged for unsatisfactory performance, not unsuitability. Because plaintiff did not make this claim to the BCNR, the court may not pass judgment on it. *See Doyle,* 559 F.2d at 1000.

■ Plaintiff also contends that his discharge on April 9, 1982 was prohibited by 10 U.S.C. § 1168(a) because his discharge certificate was not ready for delivery to him on that date.[7] Plaintiff avers that the certificate "was neither delivered, shown or otherwise available for delivery to me at the time of discharge" and that he received the certificate in the mail approximately eight weeks after he was discharged. The administrative record does not reveal the date on which the Secretary signed the certificate, i.e., the date on which it was ready for delivery to plaintiff. It does, however, contain a notation, dated April 5, 1982, that the certificate signed by the Secretary was being retained at headquarters and would be mailed to plaintiff. The BCNR

> considered, but did not accept [plaintiff's] contention that [his] discharge was prohibited under ... § 1168(a), in light of [plaintiff's] sworn statement ... the Board was unable to find that [plaintiff] did not receive on 9 April 1982 a ... Form 214/214N..., the form routinely provided to Navy personnel upon discharge from active duty. The Board considered this form to be the functional equivalent of the discharge certificate for purposes of satisfying the requirements of Section 1168(a).

AR at 3–4.

Assuming *arguendo* that the BCNR erred in concluding that Form 214/214N is equivalent to a discharge certificate, the error is not "of a substantial nature by which plaintiff has been seriously prejudiced." *Sanders,* 594 F.2d at 811. The record reveals that the certificate was ready for delivery to plaintiff on April 5, 1982. Moreover, if the discharge was otherwise lawful, the Navy could have discharged plaintiff simultaneously with the delivery of the certificate during the first week of June, 1982. On these facts, the court is constrained to conclude that the violation, if any, of § 1168(a) does not entitle plaintiff to reinstatement.

7. § 1168(a) provides:

A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.

Plaintiff concedes that he was given severance pay and DD Form 214, a Certificate of Release or Discharge from Active Duty, on the day he was discharged.

■

■ Conceding that statutory authority for discharging plaintiff is required, defendant cites § 6384(b), which provides in part that an officer shall be discharged by June 30 of the year in which the Selection Board deems his performance unsatisfactory.[8] Defendant admits it discharged plaintiff after June 30, 1981 but argues that Congress intended to conform the time of discharge required by § 6384 to the end of the federal fiscal year. Thus, defendant asserts that Congress mandated discharge by June 30 because, in August, 1956 when § 6384 was enacted, June 30 was the last day of the fiscal year. Although Congress did not amend § 6384 when it changed the federal fiscal year,[9] defendant urges the court to interpret § 6384 as requiring discharge, not by June 30, but by the end of the fiscal year.

Plaintiff correctly asserts that the starting point for statutory construction is the plain language of the statute.[10] Moreover, plaintiff maintains that defendant has long been aware of the inconsistency between the date provided in § 6384 and the end of fiscal year for, in 1977, the JAG advised defendant to lobby immediately for congressional legislation to conform the former with the latter. In response to plaintiff's argument, defendant cites a 1982 opinion of the JAG, which states, in part:

> The JAG has long held the opinion that 10 U.S.C. § 6384 is not self-executing and that there is no basis for an officer's severance from the naval service until the Secretary . . . or the President approves a selection board's finding. Stated differently, a board report is not final until approved by the official who convened the board. In this particular case, . . . strict compliance was impossible because review of the board report . . . was not completed until after 30 June 1981 . . . [T]he discharge could be legally effected as soon after approval of the board report as is both practicable and equitable.

AR at 29.

The defendant has not cited any legislative history, regulation or case supporting its argument; nor has it cited alternative statutory authority for discharging plaintiff after June 30. Moreover, defendant has not alleged that any act of plaintiff contributed to his not being discharged on or before that date. I conclude that defendant cannot rely on § 6384 as authority for discharging plaintiff after June 30th. Because it provided for discharge after June 30, 1981, the discharge order, which I temporarily stayed, was invalid as a matter of law. The BCNR's determination that § 6384 permitted discharge after June 30 was contrary to law and substantially prejudiced plaintiff. *See Sanders,* 594 F.2d at 811.

Under § 6384, defendant had to discharge plaintiff by June 30, 1981. It did not. Thus, as a practical matter, defendant's argument that the discharge in 1982 was a continuation of the proceedings begun in 1981 pursuant to § 6384 is sophistic. The only statutory authorization for discharging plaintiff in 1982 is DOPMA, the requirements of which defendant admits it did not meet. Because he was discharged without statutory authority and did not receive the process required by statute, I will grant summary judgment for plaintiff.

■

---

**8.** For the language of § 6384(b), see *supra* note 3.

**9.** Nine years ago, Congress changed the first day of the fiscal year from July 1 to October 1. Public Law 93–344, 31 U.S.C. § 1020 (1980).

**10.** The Supreme Court has declared that, absent a clearly expressed legislative intent to the contrary, statutory language must be recognized as conclusive. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980).