**SOVEREIGN ORDER OF SAINT JOHN OF JERUSALEM–KNIGHTS OF MALTA By William H. COLEMAN, II, Trustee ad Litem, Sovereign Order of Saint John of Jerusalem, Inc., and Thorbjorn Wiklund**

v.

**Salvatore T. MESSINEO, Leonard J. Messineo, Sr., Leonard J. Messineo, Jr., Francisco J. Vasile and Aleksei Nicholaevich Romanoff, a/k/a Michael Goleniewski.**

Civ. A. No. 83–0032.

United States District Court, E.D. Pennsylvania.

Aug. 30, 1983.

John Speicher, Reading, Pa., for plaintiffs.

Edward M. Foley, Brutscher & Brutscher, Kennett Square, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

### I. INTRODUCTION

This action involves a complex dispute among many parties over the control of a non-profit, religious-military order and charitable organization, the Sovereign Order of Saint John of Jerusalem—Knights of Malta, and a non-profit Delaware corporation, Sovereign Order of Saint John of Jerusalem, Inc., organized to accomplish the purposes of the order. The action also presents claims and counterclaims for trademark infringement. Jurisdiction is based upon 28 U.S.C. § 1331 and diversity of citizenship, 28 U.S.C. § 1332. Before me is plaintiff's motion for a preliminary injunction on Count III of the complaint, which involves the issue of corporate control. Plaintiff seeks to enjoin the defendants from continuing to represent themselves as directors or members of the corporation, from using the corporation's registered marks, from soliciting or accepting contributions on behalf of the corporation and order, and from carrying on corporate business in any way. The parties have submitted voluminous briefs, affidavits, trial depositions and exhibits. I held a hearing on April 27, 1983, at which additional testimony was taken. Oral argument was held on May 9, 1983. Based upon this hearing, the memoranda submitted by the parties, and the entire record, I conclude that the plaintiff did not meet his burden of showing irreparable injury or likelihood of suc-

cess on the merits and that his motion must be denied. This opinion constitutes my findings of fact and conclusions of law for the purposes of plaintiff's preliminary injunction motion only.

### Findings of Fact

The parties have submitted a short stipulation of fact. I adopt this stipulation and incorporate it by reference. I make the following additional findings of fact.

1. The order has its roots in an ancient religious and military order founded in 1048 A.D. Through the years, the order has gone through various stages and has been based in several countries. During the 18th century, the order was based on the island of Malta. About 1800 the members of the order were driven from Malta, and relocated in Russia, where the order remained until the Russian Revolution. Throughout its existence members of the nobility have held the position of "protector" of the order. In the mid-1920s, Grand Duke Alexander of Russia became its protector, and remained so until his death in 1933. The order relocated to the United States during the late nineteenth century.

2. The purposes of the order are most admirable. The order has historically dedicated itself to charitable deeds. Religious beliefs play an important role in the activities of the order and in the requirements established for membership. In light of its ancient roots, however, the lines of authority have become blurred and the order is steeped in historical controversies. There have been many groups who claim to comprise the "true" Sovereign Order of Saint John. Unfortunately, these groups sometimes publish written essays and histories, contesting the historical legitimacy of other groups, while attempting to document their historical continuity with the original order. (D 4, exhibit "D") The present action resulted from a dispute among members of one such group. This group, to which plaintiff and the defendants all once belonged, while exhibiting the unimpeachable charitable motives of the order, has experienced considerable internal strife, and struggles among its members for title and authority. (*See* D 2) Indeed, this is not the first time members of this group have turned to the courts for legal intervention in their internal disputes. (*E.g., Sovereign Order of St. John of Jerusalem, Inc., et al. v. Pichel,* No. 80–0501 (M.D.Pa. Dec. 28, 1981)).

3. Charles Pichel became active in the order during the 1950s. Pichel and the other leaders of the order called themselves the "Supreme Council". (P 12) As a leader of the order, Pichel participated in the forming of a corporation in 1956. (*See* D 11)

4. The corporation, Sovereign Order of Saint John of Jerusalem, Inc., was formed on August 9, 1956, pursuant to the Delaware General Corporation Law, Del.Code Ann. tit. 8, § 101 *et seq.* (1972). (Stipulated Fact 13; *Id.* Exhibit A; D 17)

5. The certificate of incorporation states that the purpose of the corporation is to act as "the historical and legal continuity of an ancient non-profit religious-military Order and charitable organization supported by the voluntary gifts, contributions, devises, and/or bequests of its members and associates, and the Corporation is pledged to promote, protect and teach the Christian religion, aid the needy, lame, blind, afflicted, build and maintain churches, clinics, hospitals and provide ambulances, all without restriction as to color, race or religion. In order to better accomplish these purposes it is proposed to further and more completely identify the corporation historically as the American Grand Priory of the Sovereign Order of Saint John of Jerusalem, (Knights of Malta), including the Grand Priory of Russia, originating in Jerusalem about 1050 A.D. Malta 1530, Russia 1798 and established in the United States since 1908, this title being descriptive only, and the corporation name to remain as herein designated:" (Stipulated facts, exhibit A).

6. The certificate of incorporation states the conditions of membership in the corporation as follows:

The membership of the corporation shall be restricted to those persons complying with the historical requirements estab-

lished by the Order and interpreted or modified from time to time by the Order or the Board of Directors.

(*Id.*)

7. At the time the Delaware corporation was formed, there existed a New Jersey corporation, Knights of Malta, Inc. (D 11)

8. The first meeting of the Delaware corporation was held on September 7, 1956. Present at that meeting were the members of the board of directors of the New Jersey corporation. The directors voted to accept the certificate of incorporation of the Delaware corporation, along with the resignation of the incorporators. The directors of the New Jersey corporation then voted that they should be retained and elected as directors of the Delaware corporation. (*Id.*)

9. The directors of the corporation were, almost without exception, members of the supreme council. (D 11–18)

10. During the years 1956–76, Pichel unilaterally ran both the corporation and the order. Pichel utilized proxies from members of the board of directors of the corporation and from members of the supreme council, as a formality, to accomplish those actions he wished the corporation and the order to take.

11. Since the corporation was formed, the affairs of the order and the affairs of the corporation were often intertwined. (*See* D 11–14) The board of directors discussed the affairs of the order, and the members of the supreme council discussed corporate business. (*Id.;* D 15–18; P 6–9) On occasion, the supreme council directed that the corporation should take a particular action. The corporation did not generally follow any of the directives. (*Id.;* Salvatore Messineo testimony).

12. During the years 1966–1980, the board of directors of the corporation only held meetings in conjunction with meetings of the supreme council. The directors first met informally in the mornings; following that meeting, the supreme council met; then the board of directors held its formal meeting. (*Id.;* Edelen testimony).

13. On February 28, 1977, Pichel resigned as leader of the order and director of the corporation. The terms of his resignation are reflected in an agreement, which divided the "power" over the order into two positions—the "grand priory of Europe" and the "grand priory of the United States." (D 18k)

14. On February 28, 1977, a new board of directors of the corporation was elected by the current members of the board. (*Id.*)

15. At its meetings from 1977–80, the supreme council regularly admitted and expelled members from the order. The supreme council also regularly elected and expelled members from the supreme council itself. As a result of this activity, over the three year period the entire composition of the supreme council changed. (D 18k–r; P 6)

16. From 1956 until 1983, at none of its meetings did the supreme council ever formally elect members of the board of directors of the corporation. (*Id.;* P 12; Edelen testimony; Messineo testimony)

17. At its regular and annual meetings, the board of directors of the corporation "accepted and ratified" the actions of the supreme council. (D 18l–r)

18. On November 18, 1978, Leonard Messineo, Jr. was elected to the board of directors by the three current members of the board. (D 18*o*)

19. The board of directors and the supreme council established and carry out an ongoing practice of initiating lawsuits against individuals who use the registered corporate membership mark and trademark without permission or approval by the order and the corporation. (D 18)

20. On October 17, 1980, Frank Capell, a member of the order and the board of directors, resigned from the order and from all positions he held with the Delaware and the New Jersey corporations. (D 18b)

21. On November 9, 1980, the annual meeting of the board of directors of the corporation was held. Plaintiff Wiklund was given written advance notice of the meeting, but declined to attend. At this

meeting, Salvatore Messineo and Leonard Messineo, Jr., the only two directors present, voted to remove Wiklund from the board of directors. They also voted to elect defendants Leonard Messineo, Sr., Francisco Vasile and Aleksei Romanoff to positions on the board of directors. All present agreed that anyone who wished to use the corporate marks must be formally licensed to do so by the corporation by March 31, 1981. (*Id.*)

22. By a letter dated November 12, 1980, Salvatore Messineo notified Thorbjorn Wiklund that he was "retired" from the corporation and replaced with Aleksei Romanoff. (*Id.*)

23. In April, 1981, Salvatore Messineo and Leonard Messineo, Jr., met with the other leaders of the order. The two defendants had a vigorous disagreement with the others present regarding several matters, including certain religious dogmas, control of the corporation, the position of "protector" of the order, and the licensing of the corporation's registered membership and trademarks. (P 9; Salvatore Messineo testimony)

24. From 1980 until present, the defendants have met regularly. During this period, they filed the minutes of their meetings and the requisite annual corporate reports with Delaware authorities. (D 17) From 1980 until after he filed this action, plaintiff neither held nor attended any corporate meeting, nor did he carry out any of the corporate formalities, including the requirements of the Delaware General Corporate Law.

25. On April 10, 1981, the defendants met and voted to withdraw the permission granted to the European members of the order to use the corporation's registered membership and trademarks. They also voted to abolish the supreme council and to expel plaintiff Wiklund from the order. (D 18e)

26. In July and August, 1981, the defendants caused a vote of the "general chapter of knights" to be held. Those knights to whom ballots were sent were asked to approve or reject the actions of the board of directors of the corporation in April, 1981, expelling Wiklund and other Europeans from the order. Of those seventy-six individuals sent ballots, by August 11, 1981 forty-three voted to approve the actions of the board and three voted to reject them. Twenty did not respond. (D 7, 16)

27. In August, 1981, plaintiff Wiklund and others met and voted to revoke Salvatore Messineo's and Leonard Messineo, Jr.'s membership in the order.

28. On November 22, 1981, the defendants met and voted to re-elect themselves as members of the board of directors of the corporation. (D 18s)

29. On November 14, 1982, the defendants met and voted to re-elect themselves as members of the board of directors of the corporation. (D 18f)

30. This action was filed January 3, 1983 by Wiklund to determine the parties' respective rights to use the corporation's registered membership and trademarks. (P 13)

31. On January 24, 1983, plaintiff Wiklund, Crolian Edelen, Eric deLewenhaupt and Joseph Frendo-Cumbo, met acting as the supreme council of the order. They discussed the present federal action. They voted to elect William Coleman and Joseph Frendo-Cumbo to the board of directors of the corporation. They affirmed their position that Wiklund, Coleman, and Frendo-Cumbo are the true directors of the corporation. (P 13)

32. On January 24, 1983, Wiklund, Frendo-Cumbo, Coleman, Edelen and deLewenhaupt met, as a special meeting of the board of directors of the corporation. At this meeting they affirmed their position that Wiklund, Coleman and Frendo-Cumbo are the true directors of the corporation. (*Id.*)

33. The parties filed many affidavits with voluminous exhibits in connection with the hearing held regarding plaintiff's motion for a preliminary injunction. A trial deposition was submitted for defendant Romanoff. Additionally, Salvatore Messineo, Crolian Edelen and Thorbjorn Wiklund tes-

tified at the hearing. I credit their testimony and that found in the affidavits and deposition to the extent reflected in my findings.

## II. DISCUSSION

### A. *Parties' contentions*

Plaintiff contends that those members of the order, known at some times as the "supreme council," are the true members of the corporation. Accordingly, plaintiff contends that only a vote by the members of the supreme council will succeed in electing or removing a member of the board of directors. When Salvatore Messineo and Leonard Messineo, Jr. voted on November 9, 1980 to remove Wiklund from the board of directors, Wiklund contends that their action was without effect. Likewise, plaintiff maintains that the action of the individuals meeting as the supreme council in August, 1981, removing Salvatore and Leonard Messineo, Jr., from the board of directors was a valid action by the members of the corporation. Plaintiff denies that the defendants' vote in April, 1981 abolished the supreme council or expelled him from the order. Plaintiff states that he alone was a member of the board of directors of the corporation from August, 1981 until January, 1983, when new members were elected to the board by the supreme council. Accordingly, plaintiff seeks an injunction preventing the defendants from carrying on any activities as directors and officers of the corporation.

Defendants deny that the members of the supreme council are members of the corporation. Rather, defendants maintain that the only members of the corporation are those individuals who comprise the board of directors. They state that historically the election of members to the order and the supreme council were separate and distinct from any election of members of the board of directors. It is defendants' position that plaintiff was validly removed from the board of directors on November 9, 1980 and that defendants Messineo, Vasile and Romanoff were properly elected to the board of directors at that time. Defendants maintain that the board of directors controls membership in the order, in light of the requirements stated in the historical documents of the order, the corporation's certificate of incorporation and the bylaws.

### B. *The Standard for Preliminary Injunction*

■ The grant or denial of a preliminary injunction rests in the discretion of the trial judge. This discretion is necessary because of the "infinite variety of situations which may confront" the trial judge. *A.L.K. Corp. v. Columbia Pictures Indus., Inc.,* 440 F.2d 761, 763 (3d Cir.1971). A preliminary injunction is an extraordinary and drastic remedy. The power to issue an injunction should be used sparingly, and relief should not be granted except in rare instances in which the law, the facts, and equities are clearly in the moving party's favor. *See* Wright & Miller, *Federal Practice & Procedure,* § 2948, at 428–29 (1973).

To prevail on his motion for a preliminary injunction, the plaintiff must demonstrate 1) that he will be irreparably harmed *pendente lite* unless the motion is granted; 2) that he is likely to prevail on the merits of the controversy, and 3) that as between plaintiff and defendant, plaintiff will suffer the "balance of hardship" if preliminary relief is denied. *See Nelson v. Miller,* 373 F.2d 474, 477 (3d Cir.), *cert. denied,* 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967); *Wright & Miller, supra.* Additionally, the public interest is a factor the court must consider. *Id.*

■ Generally preliminary injunctions are granted to maintain the status quo. *United States v. Adler's Creamery, Inc.,* 107 F.2d 987, 990 (2nd Cir.1939). Here, the plaintiff seeks to alter the status quo. Plaintiff seeks an order enjoining the defendants from carrying on the business of the corporation, an activity they have been collectively carrying on since 1980. Mandatory preliminary injunctions, which seek to alter the status quo, are normally granted only in those circumstances when the exigencies of the situation demand such relief and the facts and the law are clearly in

favor of the moving party. *Wetzel v. Edwards,* 635 F.2d 283 (4th Cir.1980).

### C. *Irreparable Injury and Balance of Hardship*

In this circuit, the requisite for injunctive relief is "a clear showing of immediate irreparable injury." *Ammond v. McGahn,* 532 F.2d 325, 329 (3d Cir.1976). An injunction may not be used to eliminate the possibility of a remote future injury, or a future invasion of rights. Rather, the plaintiff must demonstrate a "presently existing actual threat of irreparable injury." *Holiday Inns of America, Inc. v. B & B Corp.,* 409 F.2d 614, 618 (3d Cir.1969). A finding of no irreparable harm is itself sufficient to deny a request for a preliminary injunction. *Nat'l Land & Investment Co. v. Specter,* 428 F.2d 91, 97 (3d Cir.1970).

Essentially, plaintiff advances two grounds in support of his claim of irreparable injury. First, plaintiff claims he is being deprived of the opportunity to exercise his rights as a member of the corporation. Second, plaintiff claims that the two different groups each claiming control over the order and the corporation, soliciting contributions and propounding different views on historical and doctrinal issues, may cause the members of the order to become confused and disillusioned with the order, and ultimately, cause the dissolution of the order.

The record does not demonstrate that the plaintiff will suffer immediate irreparable harm *pendente lite* if he is denied preliminary injunctive relief.

First, it must be noted that plaintiff did not initiate legal action to redress the wrongdoings he alleges until more than two years had passed since Salvatore Messineo wrote to him telling him that he had been removed from the board of directors. Although there has been some discussion of attempted negotiations between the parties, it is clear from the record that by August, 1981, the plaintiff should have known that he had little chance of negotiating a settlement with the defendants. The plaintiff has not presented any evidence that he has tried to participate in corporate affairs with the defendants during the two year period since he was removed from the board of directors.

Additionally, plaintiff's position that he is being deprived of his rights as a member of the corporation is inconsistent with his recent activities on behalf of the corporation and order. Plaintiff and his group of directors have met since the lawsuit was filed and are now carrying on affairs in the name of the corporation. Plaintiff appears to be exercising his rights as a member of the corporation.

Plaintiff urges the court to grant a preliminary injunction in order to prevent confusion among members of the order and their disillusionment. Plaintiff fails to note, however, that his recent activities proclaiming to represent the "real" corporation and order have directly contributed to any confusion which may exist among the members of the order. Plaintiff's two-year delay in seeking legal redress in this matter, during which defendants regularly carried on corporate business, also contributed to any existing confusion regarding their authority. Additionally, in light of the many controversies and competing claims of authority which permeate the history of this order, this group of individuals, and this corporation, it cannot be said that an immediate irreparable confusion will result if the injunction is not granted.

If the harm the plaintiff will suffer if this court denies his request for a preliminary injunction is compared with the harm the defendants will incur if such relief is granted, it is clear that the defendants will suffer the same, if not a greater harm than will the plaintiff. If prohibited from carrying on any corporate business, defendants will be deprived of their membership rights in the corporation. These rights are those which the defendants have continued to exercise since 1980. They have been carrying on corporate affairs and corporate formalities, including holding regular meetings and filing all reports required by Delaware law.

Additionally, the relief sought by plaintiff in this action is to void the results of the 1980 meeting at which the defendants were elected directors of the corporation. If I were to grant plaintiff's motion for a preliminary injunction enjoining the defendants from representing themselves as directors of the corporation and from carrying on any corporate affairs, plaintiff would receive the relief he seeks prior to affording the defendants a trial on the merits. Many of the members of the order may interpret an order granting plaintiff preliminary injunctive relief as "tantamount to final determination of wrongdoing" on the part of the defendants. *See Kass v. Arden-Mayfair, Inc.*, 431 F.Supp. 1037, 1042 (C.D.Cal. 1977). Accordingly, defendants may be severely prejudiced if plaintiff's motion is granted.

D. *Likelihood of Success on the Merits*

■ Plaintiff has the burden of demonstrating a *prima facie* case showing a reasonable probability that he will prevail on the merits. *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir.1975). The existence of a factual conflict or of difficult questions of law may create sufficient doubt about the probability of plaintiff's success to justify denying a preliminary injunction. Wright & Miller, *supra*, at 455.

The determinative issue in this action is defining the members of the corporation. Plaintiff advances two grounds in support of his motion for preliminary injunction. First, it is plaintiff's contention that the members of the order known as the supreme council have historically been the members of the corporation. Thus, plaintiff maintains that the action of defendants Salvatore and Leonard Messineo, Jr. did not validly remove plaintiff from the board of directors. Plaintiff argues that the election of the other three defendants was likewise not valid. Rather, it is plaintiff's position that the action in 1981 by him and others in the name of the supreme council, expelling the defendants from the order, removed the defendants from their positions as directors of the corporation.

Second, plaintiff maintains that the certificate of incorporation of the corporation and Delaware General Corporation Law do not support the defendants' contention that the members of the corporation are those individuals who comprise its board of directors.

Delaware law states that members of a non-profit corporation have the same rights and powers as stockholders of a for-profit corporation have. Del.Code Ann. tit. 8, § 141 (1972). The certificate of incorporation must state the conditions of membership in a non-profit corporation. *Id.* § 102(a)(4). The certificate of incorporation may provide that the bylaws contain the conditions for membership. *Id.*

The certificate of incorporation in this case does not provide that the members of the corporation are the directors of the corporation. It states:

> The membership of the corporation shall be restricted to those persons complying with the historical requirements established by the order and interpreted or modified from time to time by the Order or the board of directors.

(P 12, exhibit C)

The certificate also states that the directors may "exercise the ancient acts, precedents, and the inherited power and authority of the Order to confer or grant letters patent or diplomas of membership." (*Id.*)

The parties agree that at the relevant time in 1980 there was no writing that articulated the criteria for membership other than those set out in the certificate of incorporation. To the extent that the parties argue that the bylaws state conditions for membership in the corporation, their arguments are not relevant for two reasons. First, the certificate of incorporation does not state that conditions for membership may be stated in the bylaws. Thus, under applicable Delaware law, only the certificate of incorporation may provide the conditions for membership. Del.Code Ann. tit. 8, § 102 (1972). Additionally, there are no conditions for membership stated in the bylaws which were in effect during the time period in question.

■ Plaintiff argues that Delaware law prohibits the directors of the corporation from being its only members. There is no statutory prohibition of this nature in the Delaware General Corporation Law. In support of his position, plaintiff cites *Chapin v. Benwood Foundation, Inc.,* 402 A.2d 1205 (Del.Ch.1979), *aff'd sub nom. Harrison v. Chapin,* 415 A.2d 1068 (Del.1980), in which the corporation's certificate of incorporation expressly stated that the members of the corporation were those individuals who comprised the board of directors. This case did not hold, however, that the members of a corporation may be its directors only if so stated in the articles of incorporation, but presented the issue of the validity of a voting trust in a non-profit corporation when the directors are the only members.

Plaintiff also maintains that the practice of the corporation was that the members of the corporation were the members of the supreme council. Thus, plaintiff argues, the criteria for membership in the corporation have been historically interpreted to include only the members of the supreme council. Accordingly, it is plaintiff's position that only the supreme council can properly elect the members of the board of directors.

An examination of the present record reveals that plaintiff has not demonstrated that it is likely he will be able to prove at trial that the members of the supreme council are the members of the corporation. In the non-profit corporation such as the one involved in this case, attending corporate meetings and exercising one's right to vote in corporate elections are important indicia of membership in the corporation. The evidence presented by the parties shows that the members of the supreme council who were not corporate directors never attended the annual meeting of the board of directors of the corporation, even though the supreme council held its meetings on the same day as the meeting of the board of directors of the corporation. The minutes of supreme council meetings evidence that its members were very active in admitting and expelling members of the order and admitting and expelling members of the council itself. Yet the supreme council never discussed the election of members to the board of directors of the corporation. Indeed, every election of a member to the board of directors was made by the existing board of directors. It appears from the record that the two groups kept these activities separate.

The plaintiff argues that the supreme council's control over the corporation is demonstrated by the notations in the minutes of its meetings that the supreme council directed the corporation's registered agent to take a certain action. That these directives were more often disregarded than not, however, is not controverted by the plaintiff.

■ Accordingly, plaintiff has not proven a *prima facie* case, showing a reasonable probability that he will prevail on the merits. In light of the extreme injury that the defendants will incur if the motion is granted, and the fact that plaintiff has not demonstrated a reasonable probability that he will succeed on the merits of this case, his motion must be denied.

## CONCLUSIONS OF LAW

Accordingly, I make the following conclusions of law:

1. Plaintiff has not met his burden of showing that he is likely to succeed on the merits of this dispute;

2. Plaintiff has not met his burden of showing that he will suffer irreparable injury without the requested relief;

3. Granting the preliminary injunction would substantially harm the other interested parties without just cause and may lead to further public confusion.