**SOVEREIGN ORDER OF SAINT JOHN OF JERUSALEM, INC., et al., Plaintiffs–Appellees, Cross–Appellants,**

**v.**

**John L. GRADY, Defendant–Appellant, Cross–Appellee.**

**Nos. 96–5321, 96–5410.**

United States Court of Appeals, Sixth Circuit.

Argued June 5, 1997.

Decided July 14, 1997.

---

Hugh J. Moore, Jr. (argued), Douglas E. Peck, Joel A. Conkin (briefed), Witt, Gaither & Whitaker, Chattanooga, TN, for Plaintiff–Appellee.

Bruce H. Wilson (argued and briefed), Akron, OH, Richard P. Jahn, Jr. (briefed), Jahn & Clem, Chattanooga, TN, for Defendant–Appellant.

Before: LIVELY, MERRITT, and SUHRHEINRICH, Circuit Judges.

## OPINION

LIVELY, Circuit Judge.

This long-running dispute involves the validity and alleged infringing use of a collective membership trademark registered by the plaintiff, Sovereign Order of Saint John of Jerusalem, Inc., a Delaware corporation (the Corporation). The defendant, John L. Grady, contests the validity of the mark on the ground that he, not the Corporation, represents the "true order" of St. John, and that the Corporation acted fraudulently in submitting the mark for registration. The district court found that the trademark was incontestable, and therefore valid, and that the defendant's use of the mark constituted infringement. The court entered a broad injunction, which the defendant seeks to have set aside even if this court upholds the findings of validity and infringement.

### I.

#### A.

The Sovereign Order of Saint John of Jerusalem (the Order) came into being about the time of the Crusades. While continuing to retain the trappings of its religious origins, the Order appears to have evolved into a fraternal organization. After having had various headquarters in Europe and elsewhere since its founding in the eleventh century, the Order finally made its home in America during the early part of this century. At all times relevant to this lawsuit, the Order's headquarters have been in Pennsylvania. The history of the Order in America was uneventful until the 1950s, when Charles Pichel became its "Grand Chancellor." Pichel established the Corporation in 1956 to serve "as the historical and legal continuity" of the Order. *Sovereign Order of Saint John of Jerusalem—Knights of Malta v. Messineo,* 572 F.Supp. 983, 985 (E.D.Pa. 1983).

In this capacity, the Corporation, which was also controlled by Pichel until 1977, took steps to register the collective membership mark at the heart of this dispute: "Sovereign Order of Saint John of Jerusalem [Maltese

Cross symbol] Knights of Malta [Maltese Cross symbol]." The Corporation registered the mark in 1958 and renewed it in 1977. The Trademark Trial and Appeals Board and a federal district court recently upheld the validity of the mark. *Coleman v. Sovereign Order of Saint John of Jerusalem, Inc.*, Cancellation No. 14,038 (June 14, 1990), *aff'd*, No. 90–5301, 1993 WL 34987 (E.D.Pa. Feb.9, 1993). Aside from controlling the collective membership mark, the Corporation's chief functions have been to grant membership in the Order, maintain membership rolls, and enter into licensing agreements regarding the collective membership mark.

The present controversy stems from the Corporation's exercise of its power to grant or deny these licenses. Between Pichel's 1977 resignation and 1980 the Order was run by a "supreme council," which acted in concert with the Corporation's board of directors. By admitting new members and expelling others, the supreme council completely changed its composition. *Messineo*, 572 F.Supp. at 986. Beginning in 1981, the Order required its members to obtain a license from the Corporation to use the collective membership mark on publications and other memorabilia. Predictably, members could not obtain a license without paying a substantial fee.

The defendant, John L. Grady, joined the Order in 1979 after having started the "American Christian Church and Order," which he hoped would become a legal affiliate of the Order. In 1982 Grady proposed to Salvatore T. Messineo, the President of the Corporation and Lieutenant Grand Master of the Order, that the Corporation issue a license for Grady's organization to use its trademark. Messineo denied the request because of Dr. Grady's alleged participation in para-military and white supremacist groups, and the Corporation's board of directors expelled Grady from the Order in 1983. Despite his expulsion, the defendant continued to use the trademark, name, and other symbols of the Corporation and Order on, among other things, his letterhead and a newsletter that he published. He also claims to have represented the Order in such activities as signing a "Treaty of Amity" with a person alleged to be the exiled president of Poland. The defendant contends that his conduct was appropriate because the Corporation had been taken over and the Order ruined by several members of the Messineo family and that it was therefore "incumbent on a certain group of members of the Order, known as Hereditary Knights, to come forward and restore order." At a "Chapter General" meeting in 1991, this faction of "Hereditary Knights" purportedly elected the defendant to serve as the 75th Grand Master of the Order.

### B.

The Corporation originally filed this Lanham Act suit in 1983 seeking a declaratory judgment that the defendant had infringed its registered trademark in violation of 15 U.S.C. § 1114. The district court stayed the action pending resolution of collateral litigation. Inexplicably, the Corporation did not move to lift the stay until 1994. On April 19, 1994, the Corporation finally filed an amended complaint and joined the Order as a co-plaintiff. In addition to Lanham Act claims for trademark infringement and false designation of origin, the amended complaint contained claims for RICO violations and Tennessee common law unfair competition. The defendant asserted three counterclaims based on his belief that the registration of the collective membership mark was fraudulently obtained and that the Order's leadership is illegitimate.

The district court granted summary judgment for the defendant on the RICO allegations and for the plaintiffs on all of the defendant's counterclaims. More specifically, the court ruled as a matter of law that the collective membership mark is incontestable pursuant to 15 U.S.C. § 1065, and that there had been no fraud in its registration. A jury ultimately found that the defendant had knowingly infringed the collective membership mark in violation of 15 U.S.C. § 1114, had falsely designated the origin of the collective membership mark in violation of 15 U.S.C. § 1125, and had unfairly competed with the Corporation. Although the jury declined to award damages, the district court

provided broad injunctive relief in a judgment entered on October 20, 1995.

The district court subsequently denied the defendant's motion for judgment as a matter of law and for a new trial and the plaintiffs' motion for attorney fees under 15 U.S.C. § 1117. The defendant appealed from this order insofar as it denied his motions, and the plaintiffs cross-appealed the denial of attorney fees.

## II.

Although the defendant's motion for judgment as a matter of law and a new trial attributes 29 different errors to the trial court, the defendant makes three primary assignments of error on appeal: (1) the district court erred in ruling that the Corporation's collective membership mark is incontestable under 15 U.S.C. § 1065; (2) the court erred in holding as a matter of law that the defendant had not offered sufficient evidence of fraud in the procurement of the trademark for that defense and counterclaim to survive summary judgment; and (3) the court abused its discretion by enjoining the defendant from using unregistered names and symbols of the Order. We review the first and second rulings *de novo*, as they were made in response to cross-motions for summary judgment. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir.1997).

## A.

■ The Lanham Act provides that a trademark becomes "incontestable" if not successfully challenged within five years of its registration. 15 U.S.C. § 1065; *Daddy's Junky Music*, 109 F.3d at 282. Once a trademark becomes incontestable, its registration constitutes "conclusive evidence of the validity of the registered mark and . . . of the registrant's ownership of the mark . . . [and] exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). Once incontestability is established, only those eight defenses enumerated in § 1115(b) can be interposed in an action for trademark infringement. The purpose of incontestability in federal trademark law is, quite simply, to avoid having the validity of trademarks litigated endlessly.

■ The district court ruled as a matter of law that the Corporation's mark is incontestable. This ruling had the practical consequence of foreclosing any attempt by the defendant to convince the jury that the trademark was invalid on the following grounds which he sought to assert: (1) that the Corporation did not exercise legitimate control over the collective membership mark when it registered the mark in 1958; (2) that the name used in the mark falsely suggests a connection with institutions, beliefs, or national symbols; (3) that the mark impermissibly embodies the insignia of a foreign nation; (4) that the name used in the mark is the generic name of a religion and hence not subject to exclusive appropriation; and (5) that the Corporation cannot be the owner of common law trademarks which embody either the name of a geographic location or a patron saint.

The defendant contends that § 1115(b) should not preclude the presentation of these defenses to the jury. Grady notes that 15 U.S.C. § 1065, which provides for incontestable trademark status, refers to 15 U.S.C. § 1064(3), which in turn refers to § 1052. These statutes enumerate certain defenses that prevent a trademark from becoming incontestable, several of which the defendant sought to raise before the jury. These defenses, claims the defendant, can be raised at any time to contest the validity of a trademark. The problem with this argument is that, even if the defendant's statutory analysis is accurate, the defendant presented no evidence in the district court in support of these arguments. His pretrial "tender of proof," for instance, consists of nothing more than unsupported conclusory allegations. Moreover, this court has reviewed the record *de novo* without finding any evidence that would bolster the defendant's position. The district court therefore did not err in its ruling.

The Corporation registered the mark in 1958, and no individual or entity challenged the validity of the registration, successfully or unsuccessfully, during the following five years. Thus, the collective membership

mark is clearly incontestable and subject only to the eight defenses specified in § 1115(b). The defendant asserted only one of the eight in this action: that the mark was fraudulently obtained.

## B.

■ In addition to the various defenses that the district court properly excluded under § 1115(b), the defendant claims that the Corporation committed fraud in the registration of the collective membership mark. The Lanham Act provides that the owner of a trademark used in commerce may register that mark with the Patent and Trademark Office if, among a litany of other requirements, the owner "believes himself, or the firm, corporation, or association in whose behalf he makes the verification, to be the owner of the mark sought to be registered...." 15 U.S.C. § 1051. The defendant contends that Charles Pichel, on behalf of the Corporation, violated the requirements of § 1051 and acted fraudulently when he registered the mark because he did not represent its owner. This was so, according to Grady, because the mark had belonged to the Order (and more specifically, the "true Order" that the defendant claims to represent) for several centuries.

In granting summary judgment against the defendant on this counterclaim, the district court found that "[c]areful review of the record shows no facts that lead to the conclusion that the Corporation did not in fact own the [collective membership mark] as of 1958." As the court pointed out, furthermore, a valid trademark registration requires only that the registrant "believe" himself to be the owner of the mark. See 15 U.S.C. § 1051. There is no reason to conclude that Charles Pichel did not believe that the Corporation owned the collective membership mark in 1958. At this time, Pichel was the "Grand Chancellor" of the Order, which had used the mark since long before its arrival in America. The Order had created the Corporation to serve as its "historical and legal successor" and to hold its collective membership mark. *Messineo*, 572 F.Supp. at 985. Pichel apparently ran both the Corporation and Order at this time. *Id.* at 986.

As in the district court, the defendant has offered nothing on appeal but conclusory allegations in support of his fraud-in-the-procurement theory. We affirm the order granting summary judgment in favor of the plaintiffs on this counterclaim.

## III.

■ We turn to the defendant's third argument on appeal—that the district court abused its discretion by enjoining the defendant from using not just the Corporation's registered trademark but also the numerous unregistered names and symbols by which the Order has been known since the early Middle Ages. We review the scope of the injunctive relief granted only for an abuse of discretion. *United States v. Laerdal Manufacturing Corp.*, 73 F.3d 852, 854 (9th Cir. 1995). A district court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. *Southward v. South Central Ready Mix Supply Corp.*, 7 F.3d 487, 492 (6th Cir.1993).

The injunctive relief granted by the district court is quite broad. It proscribes:

> using, in conjunction with the above registered trademark, or otherwise, certain names or symbols customarily associated with the Sovereign Order of Saint John of Jerusalem, Knights of Malta, including, but not limited to, a double-headed Eagle symbol, the initials "O.S.J.," Hospitalers of Jerusalem, Knights Hospitalers, Knights of Saint John, Knights of the Crusades, Knights of Cyprus, Knights of Rhodes, Order of Malta, Knights of Malta, and Maltese Cross symbol, in such a manner as would likely cause confusion, mistake or deception about whether the defendant or any organization of which he is a member, is affiliated with the Sovereign Order of Saint John of Jerusalem, Inc. or the Sovereign Order of Saint John of Jerusalem–Knights of Malta, whose present headquarters is located in Reading, Pennsylvania.

The parties agree that the district court enjoined the use of these unregistered names and symbols on the basis of the jury's verdicts on the federal claim of false designation

of origin and the state law claim of unfair competition. Therefore, unless this court can affirm one or both of these verdicts, the injunction must be vacated at least to the extent that it applies to unregistered names and symbols.

### A.

The plaintiffs brought their claim for false designation of origin under § 43(a) of the Lanham Act, which, in pertinent part, provides that:

Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities

\*      \*      \*

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). This provision makes illegal a broad array of rather amorphous practices that are commonly arranged under the loose rubric of "unfair competition." See *Parameter Driven Software, Inc. v. Mass. Bay Ins. Co.*, 25 F.3d 332, 336–37 (6th Cir. 1994). Section 1125 differs from the federal trademark infringement statute, § 1114, to the extent that it accords protection to certain types of unregistered marks. See, *e.g.*, *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512–13 (11th Cir.1984) ("the use of another's unregistered, *i.e.*, common law, trademark can constitute a violation of [§ 43(a) ] where ... the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a [false] representation that its goods came from the same source") (citations and internal quotations omitted).

The defendant argues that the district court should not have allowed the false designation claim to go to the jury without first deciding the identity of the "true Order," which the court specifically declined to do. The defendant asserts that he cannot be guilty of false designation or unfair competition with the Order because he, in fact, represents the "true Order." The plaintiffs, of course, claim just the opposite: the Pennsylvania Order, being the "true Order," owns the right to use the unregistered names and symbols. The district court was not persuaded by the defendant's argument and ruled that regardless of who represents the "true Order" of the Middle Ages, the Pennsylvania Order (the co-plaintiff) now owns the right to use the unregistered marks enumerated in the judgment granting injunctive relief.

Both parties overlook a fundamental problem with the false designation verdict stemming from the wording of the verdict form given to the jury. The verdict form contains five special interrogatories, the second of which pertains to the false designation claim:

Has the defendant, John L. Grady, falsely designated the origin of goods and services in violation of 15 U.S.C. § 1125(a) by his use of the registered collective mark "SOVEREIGN ORDER OF SAINT JOHN OF JERUSALEM [Maltese Cross symbol] KNIGHTS OF MALTA [Maltese Cross symbol]," **and/or any of** the following related marks, names, or symbols of the Sovereign Order of Saint John of Jerusalem, Knights of Malta: the double-headed eagle symbol; the newsletter O.S.J. Herald; or the name "SOVEREIGN ORDER OF SAINT JOHN OF JERUSALEM [Maltese Cross symbol] Hospitalers of Jerusalem, Knights Hospitalers, Knights of Saint John, The Religion, The Sovereign Order, Knights of the Crusades, Knights of Cyprus, Knights of Rhodes, Order of Malta, Knights of Malta [Maltese Cross symbol]"?

(emphasis added). Although the jury responded affirmatively to this interrogatory, because of the imprecise use of the "and/or" grammatical construction in the interrogatory this court cannot tell whether the jury

based its decision on impermissible use of the registered collective mark or impermissible use of some or all of the unregistered names and symbols. This problem could have been avoided had the interrogatory been divided into two questions, one dealing with false designation stemming from use of the registered mark, the second with false designation stemming from use of the unregistered marks. As the record stands, however, we cannot affirm the broad injunction on the basis of the false designation verdict. The court cannot be certain, as a matter of logic and grammar, whether the jury found that the defendant used the unregistered marks in such a way as to constitute false designation under federal law.

### B.

■ The injunctive relief granted by the trial court can be affirmed only if the jury's finding that the defendant violated Tennessee's law of unfair competition is valid. Although Tennessee law regarding unfair competition is not well-developed, it appears that there are three elements to this tort. A plaintiff must prove that: (1) the defendant engaged in conduct which "passed off" its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization. *Ferrari S.P.A. Esercizio Fabriche Automibili E Corse v. Roberts,* 739 F.Supp. 1138, 1146 (E.D.Tenn.1990), *aff'd,* 944 F.2d 1235 (6th Cir.1991), *cert. denied,* 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992); *United Van Lines, Inc. v. American Holiday Van Lines, Inc.,* 487 F.Supp. 235, 239 (E.D.Tenn. 1979). Tennessee's law of unfair competition differs significantly from the federal law of unfair competition in that the former requires a showing of "actual confusion," whereas the latter requires only a showing of a "likelihood of confusion." See 15 U.S.C. § 1125(a)(1); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 592 (5th Cir.1993) ("the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confusion'."); *Frisch's Restaurant, Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1264 (6th Cir. 1985) (likelihood of confusion must be shown "at a minimum" for an injunction under the Lanham Act).

■ The trial court failed to recognize this critical distinction when instructing the jury on the unfair competition claim:

As I've said, "The central test for trademark infringement is *'likelihood of confusion'.*["] The same test applies to unfair competition, which is the third claim made in this case. If you find that the plaintiffs have proved by a preponderance of the evidence that the names, words, signs, symbols, or devices used by the defendant ... were *likely to be confused* with the trademark of the plaintiff[s], then you should return a verdict in favor of the plaintiffs. If you find that the plaintiffs have not proved *the likelihood of confusion* by a preponderance of the evidence, then you should return a verdict in favor of the defendant.

(emphasis added). The defendant apparently did not object to this clear misstatement of Tennessee law, a failure which would normally be deemed a waiver. FED.R.CIV.P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."). When an error in a jury instruction is obvious and prejudicial, however, this court may consider it in the interests of justice even if the prejudiced party does not object. *Chonich v. Wayne Co. Community College,* 973 F.2d 1271, 1275 (6th Cir.1992); *Young v. Langley,* 793 F.2d 792, 795 (6th Cir.), *cert. denied,* 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986). Because the jury instruction amounts to "plain error," we are unable to uphold the injunction on the basis of the jury's finding on the state law claim of unfair competition.

### C.

The district court abused its discretion by improperly applying controlling law and us-

ing an erroneous legal standard to enjoin use by the defendant of unregistered marks, names or symbols associated with the Order. Thus, we must reverse the judgment in part. We affirm the injunction only to the extent it prohibits use by Grady of the registered collective membership trademark No. 659,-477. All other provisions of the injunction are vacated and the case is remanded to the district court with directions to grant a new trial on the claims of federal false designation of origin and state law unfair competition with respect to unregistered, common law marks, symbols and names.

## IV.

The two remaining appellate issues require only brief treatment.

## A.

■ In addition to the three assignments of error previously discussed, the defendant raised another issue during oral argument before this court: whether the district court improperly barred the defendant from introducing evidence at trial regarding the plaintiffs' alleged failure to enforce the collective membership mark for many years after its registration. The defendant did not present this argument in his motion for judgment as a matter of law, or the supporting brief or in either of his appellate briefs. Because the defendant did not first raise this issue before the trial court, this court will not consider it. *Meade v. Pension Appeals & Review Committee,* 966 F.2d 190, 194 (6th Cir.1992) ("The general rule is that the circuit court will not address issues on appeal that were not raised and ruled upon below.").

## B.

■ The final issue on appeal is whether the district court abused its discretion in denying the plaintiffs' motion for attorney fees. The Lanham Act authorizes the award of attorney fees to a prevailing party "in exceptional cases." 15 U.S.C. § 1117(a). The primary purpose of this provision is to make plaintiffs whole in trademark cases where "the infringement was malicious, fraudulent, willful, or deliberate." *Hindu*

*Incense v. Meadows,* 692 F.2d 1048, 1051 (6th Cir.1982). Trial judges have considerable discretion in handling § 1117 motions for attorney fees. *Id.* at 1051–52. In the present case, the district court ruled that an award of attorney fees would not be appropriate despite the jury's explicit finding that the defendant had intentionally infringed the collective membership mark:

> The evidence in this case, taken as a whole, reveals that defendant Grady thought that he was entitled to rightfully use plaintiffs' mark because of perceived historical and religious reasons. The Court, therefore, finds that while the defendant knew he was using the trademark, he did not do so maliciously, knowing that its use was contrary to law.

The court did not abuse its discretion.

The judgment of the district court is **AF-FIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings as outlined herein. Further, the plaintiffs' motion for assessment of double costs and damages under FED.R.APP.P. 38 is **DENIED.**